We're happy to hear argument in Cabrera v. Garland, No. 20, 1943. Counsel, we're ready when you are. Good morning, Your Honors, and may it please the Court, now I'd like to introduce you to Mr. Patrick Garcia Cabrera. The immigration judge and the BIA erred in their decision to deny the petitioner's motion to continue in two ways. First, the immigration judge abused his discretionary powers when he failed to consider all of the good cause factors in their totality. Instead of applying a balancing test of relevant factors, the immigration judge cherry-picked the factors he felt would fit his already made-up mind. In turn, the BIA did the same. Secondly, the immigration judge violated the petitioner's Fifth Amendment due process rights by arbitrarily disregarding an immigration judge's instructions to set a new period for June 2019 based on her pending new visa. Further, the immigration judge hurried the petitioner through the court system and ordered the petitioner removed after just one master calendar hearing in Charlotte following three months in removal. I will be brief. The petitioner is from Mexico and has been... I can't hear you very well again. I don't know if it's me or what it is, but maybe your microphone is off or you're too close or too far away. Okay, I just adjusted it. Can you hear me a little bit better this time? Yes. Okay. All right, so by way of background, the petitioner is from Mexico and has continuously resided in the United States since 2014. On December 27th of 2015, the petitioner was a victim of domestic violence. On March 7th of 2018, USCIS received the petitioner's new visa application. And on September 27th, 2018, the petitioner's motion to continue was denied and she was ordered removed. The immigration judge used his discretionary powers when he failed to consider all of the good cause factors laid out in Matter of Hashmi, Matter of Sanchez-Sosa, and Matter of LABR. Specifically, the immigration judge, in his written decision, I believe that's in this record 42, listed six factors that an immigration judge should consider when determining whether good cause has been established. The first factor, Your Honor, is the likelihood that the alien will be seized. The second is whether the release will materially affect the outcome of removal. Those first three factors, Your Honor, as Matter of LABR specifically stated, are the primary factors that should be taken into consideration among their main secondary factors, which I'm going to go through right now, which is number three, whether the petitioner has exercised reasonable diligence in pursuing that release. Number four, DHS's position on the motion. Number five, the length of the motion. And number six, the procedural history of the case. In the immigration judge's written decision, the judge only discussed four factors out of the six. Furthermore, the immigration judge erred when he improperly included DHS's opposition to the motion to continue as one of the reasons for denying the motion. In the transcript of hearing dated September 27th of 2018, that's an administrative record of at least 70, the immigration judge denied the motion to continue before DHS stated that she opposed the motion, nor was a motion ever filed by DHS. How could the immigration judge say that he considered the motion? Counsel, I'm sorry to interrupt you. Sorry to interrupt. I was under the impression that BIA wrote its own opinion, and if so, isn't that the opinion we review, not the IJ's? They did write their own opinion, but in their own opinion, they basically, in essence, agreed with everything the immigration judge stated. Is that what they said, or did they give their own reasons? I thought they gave their own reasons. In my view, Your Honor, it looked like they stated the same reasons Yeah, yeah. The reasons certainly overlapped with what the IJ found, but I don't believe the BIA said we adopt and incorporate the IJ's decision. Instead, they said we've reviewed these factors, and we evaluate them in such and such way, which is the same way that the IJ had evaluated the factors. You're absolutely correct, Your Honor. The board did say that. They didn't just summarily agree with the immigration judge, but in essence, they did say the same thing, but I understand your point, Your Honor, and you are correct. Moving forward, I will just address the boards a bit. I believe that's what you're implying. Is that correct, Your Honor? I take your point that what the IJ did, but I think if we're looking at the factors, we should probably be looking at what the BIA was saying about the factors. Okay. In that instance, Your Honor, the BIA did also erroneously include DHS's opposition as well. They agreed with the immigration judge that that weighed heavily in favor, or not in favor of the petitioner, but again, DHS never made an opposition to the motion prior to the immigration judge making his decision, and then the board also did the same thing. They included DHS's opposition as a reason to not grant the motion to continue, but again, that was never mentioned before the motion to continue was denied, so I don't understand how either the immigration judge or the board could take that into consideration for good. The next point, the next factor that was taken into consideration by both the immigration judge and the board was the likelihood the alien would receive the collateral relief. Now, the board acknowledged that the immigration judge stated in his written decision that the petitioner has a significant probability of succeeding with her new visa, but then neither the immigration judge or the board give it the proper weight. They just simply state that, yes, she does have a significant chance, and then that's it. The attorney general, in a matter of LADR, specifically... Yes, Your Honor. Counsel, I mean, kind of somewhat related to Judge Rushing's question, the immigration judge identifies the likelihood of success, and I understand you say it may not be enough weight, but does the board identify that as a factor? I believe the board did as well. I'm not... I mean, they list it as a factor, but I don't know, other than listed as a factor, they discuss it. Let me just check the record. You may be absolutely correct, Your Honor, the board may not... And I think this becomes a pretty big issue as to whether you believe that the board adopted the immigration opinion or whether it did not. I mean, you know, it sounds... Do you have a position one way or the other on that? I mean, I do think that the board... So they did make their own kind of their own reasoning, but their own reasoning was the same conclusion as the immigration judge, and I think you are correct, Your Honor. I don't think the board actually took into consideration the success of the visa, the significance of that. I think that was only the immigration judge in his written decision, but I don't think the board actually made a rational explanation on that point, and I think that's huge because, again, in matter of LADR, the attorney general stated that is one out of the two primary factors that should be taken into consideration, and now I do understand that germane secondary factors are also important, which the immigration judge and the board did consider, but, again, both of them cherry-picked what fit the decision that they wanted. They chose only the factors that they felt went against the petitioner and didn't include all of the relevant factors when there was more being in favor of the petitioner. For example, the length of the continuance requested. That's one of the relevant factors. That matter of Hashmi State's matter of financial visa, matter of LADR's case should be taken into consideration because of the relevance of it, and it was not. And also, it was at the behest of an immigration judge in Atlanta who wrote specifically on the change of pending that the judge could reset this case to a status docket in June of 2019, which was the following year, and the immigration judge completely disregarded that, and so did the board. They didn't even give an explanation as to why they weren't going to take that note, that instruction, into consideration. And then another relevant factor that was not taken into consideration was the length, how long it took for her to file her new visa before review. She was a victim of domestic violence in 2015. And she had already submitted her application to USCIS by March of 2018. That's just a little over two years, Your Honors. And in my opinion, that is a very reasonable amount of time to get your new visa application filed with USCIS, one being the police report certification. That takes time to get certified. That's at the discretion of the police department. We all know that police departments are extremely busy, and so there's no time limit on that. They send it to us when they want. Apart from that, that's step one. We have to file the new visa application with USCIS. While the new visa application itself is free, doesn't have a filing fee, the waiver application, the I-192, has a $930 fee associated with it and is necessary to submit at the same time as the new visa to not cause further delays. And so she did all of this in just a little over two years, but neither the immigration judge nor the board took into consideration. They completely overlooked that, which is one of the factors laid out in matter of Hatchme, in matter of Sanchez-Sosa, in matter of LED on par. And the board didn't even follow its own standards. Again, the board just very picked the factors that fitted the outcome. Another factor that was taken into consideration by both the immigration judge and the board was administrative efficiency. The immigration judge and the board discussed that administrative efficiency was a factor weighing against good cause. The immigration judge stated that because of the length that it takes for a new visa to process, it would be inefficient for the courts to ever continue the case where there's no pending relief. Now, at the time of the removal hearings, it was 2018. The processing times for a new visa were two years. The immigration judge stated this on the record during the September 27th hearing. As such, granting one continuance for a year at the behest of another immigration judge in Atlanta would not have verted the courts at that time. Was the BIA correct that there were no applications for relief? Yes, Your Honor. And I'm glad that you brought that point up because in counsel's brief and oil's brief, they mentioned throughout their entire brief that the petitioner deliberately did not file any relief. And while, yes, that may be the case, but that's not the entire truth. She didn't have any relief available to her immigration court. She did not express a fear of returning to her country. She said that she came here for a better life. Thus, that rules out effectively asylum, withholding of removal, and catch. The only other options would have been 42B, cancellation of removal, which she didn't meet the 10 years' continuous presence, among other factors. And the last relief would have been voluntary departure, but we didn't even get that option to discuss it because she only had one hearing in Charlotte, and then her motion to continue was denied, and then she was ordered removed. We didn't even get another hearing to discuss the option of voluntary departure, which would have actually been a little more beneficial to her case with the meetings attending. But we didn't get to that point. Instead, the judge just rushed her through the court system and ordered her removed. And that is the very reason why we're here today, Your Honors, because the immigration judge and the board didn't follow their case precedent. They didn't take into consideration all of the factors relevant for good cause, and they're supposed to put it in a balancing test prior to making their decision. But instead, the judge and the board made a decision, and then Terry picked out of all the case precedents which factors went in favor to their decision. And, Your Honors, that is incorrect, and that is why there are so many of these cases burdening the courts right now in appeals because immigration judges are constantly, and I'm not going to go into other cases, but at least specifically in this case, the immigration judge and the board didn't follow their own case precedent, and that is the essence of this entire appeal of this case and why we would like for this case to either be remanded back to the immigration court for further review under matter of LABR, under matter of Sanchez-Sosa, under matter of Hashby. I mean, pick a case. There's so many that clearly list out the factors that you're supposed to take into consideration, all of them, and balance them out and then make a decision. But that wasn't the case here, Your Honors. And on top of that, an immigration judge specifically instructed the judge in Charlotte to set it for status docket a year out in light of her pending visa, and he didn't even do that. Instead, he went on the record and said that that judge in Atlanta, it's in the transcript of hearing, was a friend of his and a colleague of his and that he was shocked that he would even suggest for him to put this case on another docket for the next year. He kind of went on a rant and vented about what his colleague, and he even said his friend, suggested him to do, but then didn't give a rational explanation for why he wouldn't at least consider that instruction from a sister jurisdiction. It was an utter abuse of discretion, Your Honors, and, I mean, to me, it is clear in this case that the immigration judge and the court both abused the discretion and failed to consider case precedent, Your Honors. And hopefully we can get this down today or in another case and figure out how these judges need to balance all these good cause factors when determining a motion to continue. This is my time to go, Your Honors. If you don't have any further questions, I'm going to move my time to a vote. Thank you. Happy to hear from the government. Your microphone's not on. Good morning, Your Honors. May it please the court. Cherise Pratt for the respondent, Merrick Garland. The court should deny the petition for review. The agency acted well within its discretion in denying the motion for a continuance while Ms. Cabrera pursued a new visa. Can I ask a question, counsel? Yes. The CIA may be found to have abused its discretion when it inexplicably departs from established policies. That's one before, right? You would agree with that? When it inexplicably departs, yes. Explicably departs from established policy. Now, didn't the BIA here inexplicably depart from established policy? No, it did not, Your Honor. Okay. Well, let me just tell you what I think the policy is and what I'm referring to. And that is that the BIA and the Attorney General have long followed an established policy regarding when to grant a motion for continuance if the movement has a pending IJ visa application. They did it in matter, they talked about it in matter of Sanchez, in matter of LABR, and most recently in matter of LNY. And the end result of all those cases is the primary factor, the primary factor, not the only factor, but the primary factors are the likelihood that the application of the new visa will be granted and that it will materially affect the outcome of the removal proceedings. Is any of that wrong? Yes, those holdings are correct. But the primary factors, they were not dispositive in matter of LNY. No, no, no, that wasn't my hypothetical. Those are the primary factors. Correct. And we know that if the BIA does not follow established procedures, and the established procedures tell you to look at these primary factors, it's reversible. Now, where did the BIA look at those two primary procedures? First, the BIA found that they agreed with the immigration judge's decision to deny the request. Okay, if that is so, then we go look at what the BIA, what the administrative judge's opinion, right? I thought that you just wanted to rely on this page and attempt opinion from the BIA. If we go back and look at what the AJ did, that's what the judge did, that's a whole different thing. So are we to go back and look at what he said? You didn't let me finish. So I said that the BIA agreed with the immigration judge's conclusion. The BIA pointed out that the two principal factors for consideration are whether the likelihood the alien will receive the collateral relief, and whether the relief will materially affect the outcome of the proceedings. Then the BIA went on to say that there are other important considerations, including DHS's position on the motion, the length of the continuance, administrative efficiency, and any indication as to when relief will be approved. Where did they balance in the two most important factors? They acknowledged those two factors. I know they acknowledged them. They agreed with the immigration judge who had pointed out those factors. If they agreed with the immigration judge, then are you saying they agreed with the immigration judge's rejection of his analysis of those two factors? Is that what you're saying? Yes, yes. The board agreed with the immigration judge. Then the immigration judge expressly said that there was a likelihood that she would get this relief, right? Correct. But the immigration judge said that whether the relief will materially affect the outcome of the removal proceedings is the problem, right? That's what the immigration judge said. The likelihood that she'll get it is not 100%. I'm not saying it's 100%. I'm saying it's a likelihood, right? Yes, and they balanced that. I think we're here on common ground. The immigration judge said what the immigration judge said, right? Right, and they balanced that with the secondary factors, which if you look at Sanchez-Sosa, it says, a primary factor of probable UBs of a patient must also consider any other relevant factors such as administrative efficiency. And if you look at matter of LNY, the primary factors were not dispositive in matter of LNY, and they are not dispositive here. They looked at DA cases opposition. Is it the government's position that it is never proper for an IJ to grant a continuance based on a pending U visa application? It's the government's position that it's never proper to grant. That's not the government's position. Okay, what factors would have to be different? It's always case by case. None of the factors are absolute. And looking here, they looked at DHS's opposition and the fact that she was a public safety concern, where she was involved in a hit and run causing serious injury that left the person to die in the middle of the road. And DHS brought a witness to testify at that hearing. If you look at cases 68 to 69, DHS was strongly opposed to a continuance. Excuse me? I'm just looking at the board's proceedings. Yes. And what the board said. And the board said they agree with the immigration judge's concerns about administrative efficiency. So do we go back and look at what the immigration judge said? Does that mean that we look at the evidence before the immigration judge? When the board cites to that, then you can look at what the immigration judge said with respect to that. Because the board is agreeing with the immigration judge's decision in those areas. And the board said they kind of delayed the processing time. Counsel, this is Judge Qualabam. I'm just trying to, I got two steps about how I want to make sure I understand things here. It sounds like you're saying that the statement, we agree with the immigration judge's decision to deny the respondent's request for a continuance, allows us to look at the immigration judge's decision? Is that your position? Yes. Okay. Yes, in this instance. Alright. They didn't say they adopted and affirmed, but they said they agreed with it. And then they said that while the two principal factors for consideration, there are other factors, other important considerations. And then they went on to list them. Okay. So let me just go step by step. If you could let me go through this. If we were looking at the BIA opinion solely, not incorporating the immigration judge's opinion and reasons, do you think the BIA adequately addressed all the factors? Just the BIA, not the BIA plus IJ? I believe it did, and I will tell you why. They said they agreed with the conclusion. They said there are two principal factors. Then they said there are other important considerations. And in this instance, they found that those other important considerations outweighed the two primary factors. So we all know what the two primary factors are. They didn't list them again in the third paragraph. They just went on to list the secondary factors that they thought outweighed those two primary factors. Well, do they ever, if I could just finish. Counsel, do they ever say that, does the BIA say those secondary factors outweigh the primary factors? Yes, the third paragraph. We are not persuaded that good cause for further delay of the proceedings was demonstrated. And they said she was found removable. She did not submit any applications for relief. Therefore, a final order of removal could properly be entered. And then they go on to say that the final order would not prevent her from continuing to pursue her new visa with DHS. And that DHS could grant her a stay of removal. And that DHS opposed the continuance. And they agree with the immigration judge's concerns regarding administrative efficiency. Right. So, look, it looks to me like they're giving reasons. And those may be all good reasons. But looking at the BIA's opinion itself, it lists the two primary factors, but it doesn't address how they come out in this case. If you look, and so I'm concerned a little bit about that. If you look at the IJ's opinion, I think the IJ does a better job of listing all the factors. The trouble with the IJ's opinion is twofold. Number one, was it actually incorporated? And I understand you think it is, and that may be right. But it wasn't as explicit as it is at some kinds. And the other problem with the IJ's opinion is it lists this issue about whether the relief will materially affect the outcome of the removal proceedings. And the IJ said it did not. And it said it did not because it, the IJ, couldn't grant that relief. And that seems to be... No, no, no, no. It also said USCIS has sole jurisdiction over applications for adjustment of status based upon an approved and current U visa. And so if you understand the U visa process, it's a many-tiered process. You first have to apply, then you have to get... It's years. She's at least two years away from even getting the application looked at. Right, right. It's three years on the waiting list. And then she has to apply for adjustment of status, and that's all discretionary. That's what the IJ was pointing out. That's why it's not clear where DHS opposes... Where DHS feels that she's a public safety risk, it's not clear that she will be approved. It's generally good form to let the judge talk. Yes. Sorry. I'm okay, and I appreciate your passion. But it seems to me... And what you're talking about, length of delay, I mean, those I think are legitimate factors for sure, and your points are well taken. But it seems to me that the factor is whether the collateral relief, a U visa application, would affect the withholding decision. And as I understand the U visa process, if it's granted, then you would not be removable. Well, she has to adjust status, and that is discretionary. And DHS has pointed out that she is a public safety concern, and they have refused... Okay. Yeah. So she may lose it. I get you. But if successful, they said it was likely to succeed, and if it's successful, it would have adjusted her status. No, no, no, no. She's likely to succeed in having the U visa granted, but she still has to adjust her status. And that is completely discretionary, and USCIS has identified her as a public safety risk. And actually, opposing counsel requested prosecutorial discretion, and as recently as August 11, 2021, DHS denied it. They said that her equities are insufficient to overcome the public safety concern presented by the facts underlying her criminal conviction. Go ahead. Go ahead, Judge Motz. That's new information that's not before us, but I mean, I appreciate that point. Well, but the test is not that it would get her relief necessarily, but it would materially affect. And of course it will materially affect. There's no question about that. In other words, it would have any effect at all. If she's denied adjustment of status, if she's denied adjustment of status... If they would continue to, but if they saw she got this other visa, they might not. It's all the same agency. It's all the same agency. It's USCIS under DHS, and DHS is saying she's a public safety risk, and they're refusing to exercise prosecutorial discretion. Okay, so is that the reason that they gave? The reason they gave was that DHS opposed, and if you look at the transcript on page 68 to 69, DHS says that she was involved in the hit and run and left someone to die in the middle of the road, and they brought a witness to testify. Okay. And so DHS strongly opposed this. Counsel, I understand that the agency opposed it. Does the agency say that it opposes this because it will never accede to her getting the visa? No, no, the agency doesn't say that. It's just the facts, and we don't know what the underlying facts are. All right, but this is not an abuse of discretion where the judge weighs all the negatives, considerable negatives, and the positives, and the length of time she's asking, essentially, for that to stay on the docket for seven years, because it's like we are now at 2021, and she's two years away. But that's what always happens when you have this visa application, right? This is nothing extraordinary. Well, when you balance all the factors, the fact that she's a public safety concern. Ma'am, remember what I told you about letting the judge talk? After all, you want to know what we're thinking, right? Yes. Because you're not going to be able to make the decision you are, right? Correct. So, remember I asked you a long time ago if it's ever proper for an I-date to land a continuous date on a pending U visa application? And you said yes, I think. It all depends on the facts and circumstances. They look at the primary factors. So, direct answer to that question, yes or no. You said, is it ever proper? Of course. In some instances, it's proper. Not in this one. In this one, the secondary factors outweigh the primary factors. Can I ask a procedural question? I was curious about whether the pending U visa proceeding would be considered and have an impact if there were pending applications for relief. In a different case, so obviously the petitioner here is not seeking asylum withholding. She's not seeking any relief that IJ could grant currently. But if she were, if there were a pending asylum application or a pending withholding application, would the U visa proceedings potentially affect those or affect the outcome of that? Or would it still not be relevant? I would imagine that it would be more relevant because she's seeking some relief from the immigration court that they can give her. So, maybe that would be more amenable to continuances because she'd have to get evidence for the asylum, for withholding and torture. So, I would imagine in a case where she was seeking other types of relief, that that would be more amenable to a continuance rather than you're here. You don't want anything from me. You're looking for relief from another agency. You can get a stay from that agency. You know, I can't do anything. You're on my doctor for five years, seven years. I'm carrying your case. There's a million case backlog of immigration cases, and you're not the only one. So, it's like, why carry this case for five years, seven years? We're in 2021. Just to follow up one procedural question. So, does what happens in the U visa process, does that have any different impact? If there is an application pending that, you know, an IJ would need to know and take that into consideration when assessing asylum versus a situation like this where there's no application for relief and it's just a matter of entering the removal order. Would there be any, I guess, any information that he would get from the U visa process, or is it just entirely separate in both situations? It's entirely separate, collateral, another agency. The IJ has nothing to do with it. Only, are you seeking asylum, you know, withholding, torture? Is there some relief that you're asking the IJ that he can give you? And if he can't, then why is your case sitting there for many, many years when there's a million case backlog and you can get the same stay from DHS? And if there are no further questions, I would rest on the brief. Thank you very much. Thank you. Is there any rebuttal? Yes, your honors, and may it please the court. So, I'm just going to briefly address a couple points that I feel are the most relevant coming after hearing counsel. First and foremost, I want to address the hit and run conviction, because I think it's a very nice way to distract from the issues here at hand. Because the immigration, and neither did the BIA take into consideration that conviction on her record at all. When assessing good cause, neither of them took that into consideration. DHS made a comment about it in the hearing at the end of the hearing, after the judge already denied the motion to continue and was saying that he was going to order the respondent removed. And even in the hearing, the judge goes, well, what do you want me to do with that? It's already been decided. And at that point, it's kind of irrelevant for all intents and purposes. He already denied the motion, and he already ordered her removed. Furthermore, that conviction did not have serious injury. She was convicted of hit and run with minor injury, which is a misdemeanor in South Carolina. So, that is also a misstatement that you're trying to gear the issues here in a different direction. When that hit and run has nothing to do with the good cause factors for a motion to continue in this case, because neither the judge nor the BIA took that into consideration. As it relates to the prosecutorial discretion request, yes, we did file two requests with DHS, and they were both denied solely because of that hit and run. And it was the same counsel from DHS who conducted the hearings that I was working with, and she refused to grant any discretion just because of that hit and run. And I will just say for the record that the judge in Atlanta granted the petitioner a bond knowing of that hit and run charge, because in his decision, he specifically stated that she had far more positive equities that weighed in her favor than this single conviction on her record, which was a misdemeanor and which caused minor injury, not serious injury. That's what she was charged with, but what she actually was convicted of was minor injury, which is a misdemeanor. That is a huge difference, but regardless, it's irrelevant in this case because it wasn't taken into consideration by the immigration judge nor the Board of Immigration Appeals. And Judge Pradobaum, just to go off of what you were saying earlier, you are absolutely correct. The BIA did not take into account the likelihood of success of the petitioner's e-visa claim. They mentioned it as one of the factors to take into consideration, but then didn't even address it in their written decision. So it again just shows that the immigration judge and the Board of Appeals both already had a decision made in mind and then cherry-picked what factors. And I keep saying that, Your Honor, because it is so important to this case that they cherry-picked factors specifically that weighed against the petitioner and did not include factors that weighed in favor besides stating that she has a good chance of succeeding on her e-visa claim. And the question is, these victims, because they're victims of a crime, they should be afforded at least somewhat of discretion, whether small or large, because they are victims of a crime committed in the United States. In this case, it was domestic violence where she was choked in front of her child, her minor child. The guy was a United States citizen and he was charged with criminal domestic violence in the state of South Carolina. That should have also been taken into consideration, the nature of the crime that was committed against her. It was very, very serious and very brutal, hence criminal domestic violence. And she assisted law enforcement with everything that they needed and with the prosecution of her ex-boyfriend at that time. And that is the very reason why victims of a crime are afforded a special kind of discretion because of the nature of what they went through. And your honors, I just, I can't say it enough, but I do think that either this case needs to be remanded back to the immigration court for further review consistent with case precedent. Or in the alternative, I think this court needs to establish a bright line rule, if I may be so bold, a bright line rule for immigration judges and the board to follow. If we don't keep burdening the courts, the BIA and this court with this issue. Clearly, the judges and the board are running rampant, cherry picking, and they need to be taking all relevant factors in consideration, balancing them out, and then making a decision. Whether favorable or not, I would not appeal a case if the judge had done all of that and gave a rational explanation for his decision. I would not appeal it had he denied it. And if you have no further questions, your honors, I see I have five seconds left. Thank you so much for your time. Thank you both for your very vigorous arguments. We'll ask the clerk to adjourn court for the day. The honorable court stands adjourned until this afternoon. God save the United States and his honorable court.
judges: Diana Gribbon Motz, A. Marvin Quattlebaum Jr., Allison J. Rushing